Bill B. Meenk and Treasure L. Meenk v. Commissioner.
Meenk v. Commissioner
Docket No. 1924-69.
United States Tax Court
T.C. Memo 1970-302; 1970 Tax Ct. Memo LEXIS 57; 29 T.C.M. (CCH) 1393; T.C.M. (RIA) 70302; October 29, 1970. Filed Bill B. Meenk and Treasure L. Meenk, pro se, 24550 Treasure Vista Dr., Newhall, Calif. *58 Michael J. Christianson, for the respondent. IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: The Commissioner determined deficiencies in petitioners' Federal income taxes for the calendar years 1966 and 1967 in the amounts of $397.50 and $342, respectively. The issues [1] for our determination are whether Bill B. Meenk (referred to sometimes hereinafter as petitioner) provided during 1966 more than one-half of the total support of his four children - Janice, Judith, Jeanne and William; and whether he provided, or shall be treated as having provided, more than one-half of the total support during 1967 for Janice, Jeanne and William. Findings of Fact Some of the facts were stipulated and they, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners Bill B. Meenk and Treasure L. Meenk, [2] husband and wife since November 12, 1965, filed joint income tax returns for the calendar years 1966 and 1967 with the district director of internal revenue, Los Angeles, *59 Calif. At the time they filed the petition herein petitioners resided in Newhall, Calif.
Petitioner had four children by a previous marriage to Mildred J. Meenk (hereinafter Mildred), which marriage ended in divorce. The names, birth dates, and ages of these four children are: Name
Birth Date
Age as ofJan. 1, 1966
Janice Bea
10-23-46
19
Judith Ann
12-30-47
18
Jeanne Sue
4- 2-54
11
William Charles
9-22-56
9
The Superior Court of the State of California for the County of Los Angeles granted an interlocutory judgment of divorce to Mildred on June 7, 1965, which decree awarded custody of the four Meenk children to Mildred, and ordered petitioner to pay Mildred $25 each month as alimony and the sum of $50 per month for the 1394 support and maintenance of each child, commencing June 10, 1965. On July 9, 1965, a final judgment of divorce was entered by the Court. The Court modified its original order on February 16, 1967, by suspending any further support for Judith and by increasing the *60 amount petitioner was required to pay Mildred for support of each of the other three children from $50 to $65, effective February 25, 1967. The decree was further modified in that petitioner was thereafter required to pay token alimony of $1 per month. Petitioner paid $2,472.50 in 1966 and $2,423.71 in 1967 [3] in child support payments to a trustee of the Superior Court, who, in turn, conveyed the funds to Mildred. With regard to the alimony payments, $35 was paid to the trustee during 1966, while $154.29 was paid to the trustee during 1967. In addition, petitioner paid $33 per month for family medical and hospitalization insurance during the years in question covering the four children of Mildred and Bill Meenk, his three stepchildren, Treasure Meenk, and petitioner. The annual cost of this insurance was $44 for each person, making petitioner's total support payments $2,648.50 for 1966 and $2,455.71 for 1967. Mildred, who never remarried, *61 lived with her four children in the same household throughout the years 1966 and 1967. Mildred, Janice, and Judith were employed during the years at issue, each earning the following gross amounts: Year
Name
Gross Earnings
1966
Mildred
$ 5,041.86
Janice
2,234.00
Judith 1,860.00
Total
$ 9,135.86
1967
Mildred
$ 5,181.62
Janice
2,801.00
Judith 4,081.40
Total
$12,064.02
In addition to the support payments and the above earnings, there were other sources of money available for expenditure in support of the four Meenk children. Janice received $300 in 1966 and $500 in 1967 as a state loan for her education. Mildred Meenk possessed $4,000 in June 1966 from the sale of certain property, most of which she expended toward the support of herself and her children during the remaining months in 1966. In addition, Mildred received monthly rental income of $115 during the last half of 1966 for rental of an unfurnished house located in the rear of her own residence in Lynwood, Calif. Mildred received $115 per month rental on the same property for part of 1967. However, the property was rented for the remainder of 1967 to relatives of Mildred *62 at a reduced rental of $100 per month. Janice, who was a full-time college student during the years at issue, filed a Federal income tax return for each year in question, claiming herself as a dependent. Judith, who was a full-time college student from January to June 1966 and a part-time student during the remainder of 1966 and all of 1967, also filed income tax returns for both years at issue and claimed herself as a dependent on each of those returns. Judith was considered self-supporting during 1967 and her support is not at issue for that year. Janice and Judith each contributed her salary, after withholding certain amounts, [4] to a joint checking account (hereinafter the family fund) in the names of Mildred and Janice, which was used to cover the expenses of Mildred and the four children. Janice drove a car during 1966 and 1967 (hereinafter Janice's car) which was registered in the names of both Mildred and Janice. In July 1966, another *63 car (hereinafter Judith's car) was purchased and was registered in the names of Mildred and Judith. Monthly payments of $44.62 were made from the family fund for Judith's car during the period in question. The cost of operating Janice's car during 1966 was $403.87, while $118.96 [5] was expended from the family fund on Judith's car in 1966. During 1967, $458.98 was spent on gasoline, general maintenance and insurance for Janice's car. Mildred Meenk's total use of each car in each year at issue was five percent, which was also the total use attributable to each 1395 of the two younger children, Jeanne and William. Certain expenses were incurred for the benefit of the household generally. For the first six months of 1966, Mildred rented a house for herself and her four children, paying $135 each month as rent. Thereafter, she purchased a house where she lived with her children during the years in question. Mortgage payments on this house totaled $145 per month, *64 and annual taxes were between $500 and $600. Mildred expended approximately $2,340 on food during each of the years at issue. In addition, she made payments for utilities averaging about $35 per month during 1966 and approximately $40 per month during 1967. The following tables set forth the amounts and categories of other expenditures made during 1966 and 1967 toward the support of the Meenk children: *10 1966
Item
Janice
Judith
Jeanne
William
Clothing
$225
$225
$175
$175
Education
221
60
10
10
Gifts
50
50
50
Church Donations
100
186
26
26
Drugs
15
15
10
Dry Cleaning and Laundry
75
75
50
50
Recreation
75
75
45
45
Pets
20
20
20
20
Child Care
100
Newspaper and Magazine Subscriptions
20
12
12
Personal Care (soaps, haircuts, etc.)
100
100
75
55
Vacations
25
Miscellaneous (hobbies, entertainment, etc.)
50
50
45
45
Medical Insurance
44
44
44
44
Dental Care
99
286
535
11
Personal Allowance [6]
520
520
156
104 *10 1967
Item
Janice
Jeanne
William
Clothing
$325
$275
$210
Education
221
30
15
Gifts
100
75
75
Church Donations
100
26
26
Drugs
10
10
Dry Cleaning and Laundry
75
60
45
Recreation
85
55
55
Pets
20
20
20
Newspaper and Magazine Subscriptions
20
5
4
Personal Care (soaps, haircuts, etc.)
110
85
65
Vacations
185
Miscellaneous (hobbies, entertainment, etc.)
60
40
70
Medical Insurance
44
44
44
Eye Glasses
51
Dental Care
68
476
33
Personal Allowance
520
260
156
*65 In comparing the cost of supporting Mildred Meenk with the cost of supporting her four children during the years involved, Mildred spent less than her children for clothing and entertainment, while her personal allowance varied. Opinion We must resolve the question whether petitioner is entitled to dependency exemption deductions for each of his four children in 1966, and for three of his children in 1967. 1396 The basic test applicable in this type of case as set forth by sections 151 and 152 [7] is clear and precise: The taxpayer must provide over one-half of the total support of a dependent in order to qualify for the personal exemption deduction. [8]
*66 As to 1966, petitioner has the burden of proving that he has met the support test requirements of section 152(a)(1), and, in order to show this, he must necessarily establish the total support of each child. Robert I. Brown, 48 T.C. 42 (1967); Aaron F. Vance, 36 T.C. 547 (1961); Bernard C. Rivers, 33 T.C. 935 (1960). However, due to a change in law with respect to 1967, we must first determine if any of the three Meenk children received over half of his or her support from petitioner and Mildred, the divorced parents of the children. If so, then the new section 152(e) will become the operative section in determining whether petitioner is entitled to a dependency exemption deduction for such child. Mildred testified that the fair rental value of her house was $175 per month. However, based on the fact that she leased to strangers a somewhat comparable, but unfurnished, house situated on the same property as her own residence for $115 per month, and keeping in mind that she had rented another house for her family for the first six months of 1966 for $135 per month, we feel a monthly rental of $160 per month represents the fair rental value *67 of the furnished house in which Mildred and her children lived for the period in question. Mildred's testimony revealed that her use of Janice's car in each year at issue was approximately 5 percent, as was her use of Judith's car. Respondent has allocated the remaining use of each of the cars equally among the four Meenk children. 1397 We feel that this allocation is unwarranted, and indeed, it strains credulity to believe that the use of the cars was equally attributable to a 9-year-old boy, an 11-year-old girl, an 18-year-old girl, and a 19-year-old girl, [9] particularly where the latter two worked and attended college. Accordingly, we allocate five percent of the total use of each car to each of the two younger children, Jeanne and William. While we find that Mildred's estimates as to the various support items were, at times, exaggerated, we have, from an examination of the record as a whole and of the documentary evidence presented to us, been able to arrive at a total support amount *68 for each child: *10 Total Support [10]
Child
1966
1967
Janice
$2,778.29
$3,084.13
Judith
2,733.11 *
Jeanne
2,245.14
2,469.95
William
1,709.14
2,072.95
Since petitioner contributed $662.12 toward the support of each of the four children in 1966, it is evident, and we hold, that he did not provide more than one-half the total support for any of them and, accordingly, is not entitled to dependency deductions for them in that year. As to 1967, we must first determine if section 152(e) is applicable. It will apply only if and to the extent that one *69 or more of the three Meenk children [11] in fact received over one-half of their support from Mildred and petitioner together for that year. Janice's total support in 1967 was $3,084.13. Although she was a full-time student, as defined by section 151(e)(4)(A), she was also employed during 1967 and earned a gross salary of $2,801. She retained $10 per week as an allowance and deposited the remaining amount in the family fund. She also received a $500 education loan in 1967. Despite the fact that Janice's earnings were deposited in a common family fund and were used to help pay family expenses, we cannot treat the amount she contributed thereto as applying equally to the support of all five members of the household who shared in the family fund. The amount Janice contributed to the fund must be considered as applying first to her own support. See Estela De La Garza, 46 T.C. 446 (1966), affd. per curiam 378 F. 2d 32 (C.A. 5, 1967). In so treating Janice's contributions to the fund, it is clear that *70 petitioner and Mildred together did not provide more than half of her support in 1967. Therefore, section 152(e) is not applicable. We must now turn to the basic support test of section 152(a) to resolve the issue as to Janice's support. Since petitioner contributed a total of $2,455.71 [12] to the support of his three children in 1967, one-third of which ($818.57) is attributable to Janice's support, he did not provide over one-half of her total support in 1967, and is, therefore, not entitled to a dependency deduction for her in that year. With regard to whether petitioner and Mildred provided over half of the support of Jeanne and of William, [13] it is noteworthy 1398 that Janice had no funds available which could have been used to support Jeanne and William during 1967. *71 Therefore, it is reasonable to assume that Jeanne and William received part of their support from petitioner and the remainder from the money which Mildred had available from all sources in 1967. We conclude that section 152(e) applies in determining whether petitioner is entitled to a dependency deduction for each of them. *72 Since petitioner has provided more than $1,200 for Jeanne's and William's support, he will be entitled to claim them as dependents if a second requirement is also met, viz., in the terms of section 152(e)(2) (B)(ii), the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody. First of all, we note that section 152(e) (2)(B)(ii) is phrased in terms of imposing a burden of proof on the parent having custody of the dependent child, whether or not this custodial parent is a party to the judicial proceeding. In its traditional sense, the burden of coming forward with evidence is placed only on "parties" to an action. See Wigmore, Evidence, sec. 2483 (3d ed. 1940). Although phrased negatively, section 152(e)(2)(B)(ii), in effect, requires the parent having custody to "clearly establish" that he provided more for the support of a child than the parent not having custody. In cases such as the one before us, where only the parent not having custody, viz., the noncustodial parent, is a petitionerparty, we are faced with the issue of whether the Commissioner-respondent *73 must offer the proof required by section 152(e)(2)(B) (ii) once the noncustodial-petitioner parent has established that he has paid $1,200 or more as set forth in section 152(e)(2)(B)(i). We have resolved this question in the affirmative since the noncustodial parent in such a case will be considered under section 152(e)(2)(B) as having provided over half of such child's (or children's) support, if the Commissioner does not present the evidence required by that section. Having carefully examined the entire record before us, we conclude that respondent has clearly established that Mildred provided more toward the support of Jeanne and of William than petitioner during 1967. Allen F. Labay, 55 T.C. - (October 5, 1970). In order to reflect the conclusions reached herein, Decision will be entered for the respondent. Footnotes
1. Petitioners are not contesting the adjustments made by the Commissioner increasing their deductions for taxes and medical expenses for the year 1966.↩
2. Treasure L. Meenk is a petitioner only by virtue of having joined with her husband in filling their Federal income tax returns for the years in question.↩
3. Although both petitioner and respondent contended that the trustee's records indicated that the total child support payments were $2,473.50 and $2,403.71 for 1966 and 1967, respectively, we feel their figures reflect a mathematical error.↩
4. Janice kept $10 per week from her pay check as a personal allowance. Judith kept a like amount and, in addition, paid ten percent of her earnings to her church before depositing the remainder of her income in the family fund.↩
5. This figure includes car insurance and general maintenance. It does not include amounts spent on gasoline since we were not presented with any evidence regarding the cost of gas for Judith's car during 1966.↩
6. See footnote 4, supra.↩
7. All statutory references are to the I.R.C. of 1954, as amended, unless otherwise indicated. ↩
8. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (a) Allowance of Deductions. - In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. * * * (e) Additional Exemptions for Dependents. - (1) In general. - An exemption of $600 for each dependent (as defined in section 152) - * * * (B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student. * * * (3) Child defined. - For purposes of paragraph (1)(B) the term "child" means an individual who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the taxpayer. (4) Student and educational institution defined. - For purposes of paragraph (1)(B)(ii), the term "student" means an individual who during each of 5 calendar months during the calendar year in which the taxable year of the the taxpayer begins - (A) is a full-time student at an educational institution; * * * SEC. 152. DEPENDENT DEFINED. (a) General Definition. - For purposes of this subtitle the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer); (1) A son or daughter of the taxpayer, or a descendant of either, * * * (e) Support Test in Case of Child of Divorced Parents, Et Cetera. - (1) General rule. - If - (A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from his parents who are divorced or legally separated under a decree of divorce or separate maintenance, or who are separated under a written separation agreement, and (B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent (referred to in this subsection as the parent not having custody). (2) Special rule. - The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if - * * * (B)(i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child,$1,200 or more for all of such children) for the calendar year, and (ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody. For purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support. We note that section 152(e), an amendment to section 152, is applicable with respect to taxable years beginning after December 31, 1966.↩
9. The ages given were the children's ages of January 1, 1966, the first year in question. We are fully aware that the children had two birthdays during the two-year period at issue.↩
10. We note that we did not include the car payments on Judith's car as part of the total support since the fair market value of property, not the cost thereof, is determinative of support. Sec. 1.152-1(a)(2)(i), Income Tax Regs. However, we were not presented with sufficient evidence to make a finding as to the fair market or rental value of either Janice's or Judith's car during the years involved. Therefore, our figure for transportation is substantially lower than it would have been had we been able to arrive at the fair market value of the cars. a1 Judith's support is not at issue in 1967.↩
11. We have already noted that Judith, who was 19 years old as of January 1, 1967, was a part-time student during 1967 and was considered self-supporting.↩
12. The total support provided by petitioners for 1967 according to the trustee's records was $2,423.71. After having deducted the support payments attributable to Judith for January and February 1967, we added the proportionate share of medical insurance payments and divided the total by three because Judith's support was not at issue for the year 1967. Thus, we arrived at the figure of $2,455.71.↩
13. We will assume that none of Judith's funds were available for the support of Jeanne and William during 1967. Although we do not know the amount Judith expended for her support in 1967, we do know that she was self-supporting in that year. Taking into consideration the total support for Judith in 1966 ($2,733.11) and bearing in mind that she earned a gross salary of $4,081.40 in 1967, we feel that there would be a minimal amount remaining from her salary which could conceivably have been used toward the support of Jeanne and William. Judith testified that she "signed some of her checks over to [the] family fund" during 1967. Based on this testimony, we cannot conclude that Judith contributed toward the support of Jeanne and William. Rather, it is more likely that the checks she signed over to the family fund were to represent her share of the household expenses, such as food, lodging, and utilities.↩